UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| RICHARD LEE SNIDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:10-CV-008 |
| | ) | |
| FORT WAYNE POLICE DEPARTMENT, | ) | |
| OFFICER ROBIN THOMPSON, | ) | |
| SERGEANT MARK DOLZEAL, | ) | |
| OFFICER AMOS, UNKNOWN OFFICER, | ) | |
| UNKNOWN OFFICER, and | ) | |
| UNKNOWN OFFICER, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on Defendants' Motion to Enforce Settlement Agreement against the Plaintiff, Richard Lee Snider, filed on August 30, 2011.[1] (Docket # 38.) The case arises out of an incident in which the Fort Wayne Police Department (FWPD) seized Snider's firearm and for which Snider brought this present action under 42 U.S.C. § 1983 against the Defendants, FWPD, Officer Robin Thompson, Sergeant Mark Dolzeal, Officer Amos, and three unknown officers (collectively, "Defendants"). For the following reasons, the Court will GRANT Defendants' Motion to Enforce Settlement Agreement.

**II. FACTUAL AND PROCEDURAL BACKGROUND**

In December 2010, Plaintiff's counsel, Samuel Bolinger, and Defendants' counsel,

---

[1] Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (*See* Docket # 25.)

1

Carolyn Trier, first discussed settlement. (Defs.' Mot. to Enforce Settl. Ex. A.) Bolinger indicated that his client would settle if, among other terms, the seized firearm was returned. (Defs.' Mot. to Enforce Settl. Ex. A.) Trier informed Bolinger that FWPD could not return Snider's firearm as part of the settlement because the Indiana State Police (ISP) had denied Snider's gun permit. (Defs.' Mot. to Enforce Settl. ¶ 2.)

Settlement negotiations between Bolinger and Trier resumed on May 10 and May 11, 2011. (Defs.' Mot. to Enforce Settl. ¶ 3.) During these discussions, Trier reaffirmed that FWPD could still not return Snider's firearm. (Defs.' Mot. to Enforce Settl. ¶ 3.) Ultimately, the parties entered into a settlement agreement on May 11, 2011, with Snider, through Bolinger, laying out the terms via fax and asking Trier to confirm them. (Defs.' Mot. to Enforce Settl. Ex. B.) The settlement terms, as set out by Snider's own counsel, were $3,500, including attorney's fees, and Snider's reservation of his right to appeal the ISP decision denying him a gun permit to the Indiana Court of Appeals. (Defs.' Mot. to Enforce Settl. Ex. B.) After Trier orally confirmed these terms, Bolinger's assistant, Mark Schuster, sent Trier an emailing accepting Defendants' offer to settle. (Defs.' Mot. to Enforce Settl. ¶¶ 5-6, Ex. C.) Schuster's email reiterates the terms of the agreement as a $3,500 total settlement, with $3,000 going to Snider and $500 going to Bolinger, and Snider's continued ability to pursue his rights with ISP regarding his gun permit. (Defs.' Mot. to Enforce Settl. Ex. C.) On May 13, 2011, Trier sent the Release and Hold Harmless Agreement to Bolinger for Snider to sign. (Defs.' Mot. to Enforce Settl. ¶ 7, Ex. D.)

Snider, however, refuses to sign this agreement because it makes no mention of the seized firearm. Consequently, Defendants filed their Motion to Enforce Settlement Agreement, on which the Court heard arguments on September 28, 2011. (Docket # 40.) At the hearing,

Bolinger stated that he had apparent, if not actual, authority from Snider in reaching the settlement agreement, but that Snider now wants the firearm returned. After arguments, the Court took the matter under advisement.

## II. STANDARD OF REVIEW

An agreement to settle claims in a federal court is enforceable "just like any other contract." *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007). Local contract law governs issues regarding the formation, construction, and enforceability of a settlement agreement. *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000). Under Indiana law, which governs here, an agreement to settle a lawsuit is generally enforceable. *Zimmerman v. McColley*, 826 N.E.2d 71, 76-80 (Ind. Ct. App. 2005) (enforcing an oral settlement agreement in personal injury case). A settlement agreement does not need to be written to be enforceable. *Id.* at 77 n.1; s*ee also Vernon v. Acton*, 732 N.E.2d 805, 809 (Ind. 2000). As "[s]ettlement agreements are governed by the same general principles of contract law as any other agreement," they require "[a]n offer, acceptance, [and] consideration." *Zimmerman*, 826 N.E.2d at 76.

Furthermore, "[a] meeting of the minds of the contracting parties, having the same intent, is essential to the formation of a contract." *Id.* at 77. "The failure to demonstrate agreement on essential terms of a purported contract negates mutual assent and hence there is no contract." *Ochoa v. Ford*, 641 N.E.2d 1042, 1044 (Ind. Ct. App. 1994); *see also Schuler v. Graf*, 862 N.E.2d 708, 715 (Ind. Ct. App. 2007) ("If a party cannot demonstrate agreement on one essential term of the contract, then there is no mutual assent and no contract is formed.") (quotation marks omitted). Whether a meeting of the minds exists "is a factual matter to be determined from all the circumstances," and the Court should not consider "the parties' subjective intents but [rather]

their outward manifestation of it." *Zimmerman*, 826 N.E.2d at 77; *Schuler*, 862 N.E.2d at 715.

As regards authority, agreements to settle are "enforceable against a plaintiff who knowingly and voluntarily agreed to the terms of the settlement or authorized his attorney to settle the dispute." *Glass v. Rock Island Ref. Corp.*, 788 F.2d 450, 454 (7th Cir. 1986) (internal quotations omitted) (affirming the enforcement of a settlement agreement in a Title VII case); *accord Whittington v. Tr. of Purdue Univ.*, No. 2:09 cv 9, 2011 WL 1336514, at *2 (N.D. Ind. Apr. 5, 2011) ("The parties must knowingly and voluntarily enter into the agreement either personally or by providing their attorneys with authority to settle."). Once an agreement is reached, "[a] party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement insufficient." *Glass*, 788 F.2d at 454. Moreover, a party who has previously authorized a settlement remains bound by its terms even if he changes his mind. *Id.* at 454-55. As such, a party's later unhappiness with a settlement is "neither here nor there." *Allen v. Dana*, No. 1:10-cv-281 PPS-RBC, 2011 WL 3163232, at *2 (N.D. Ind. July 26, 2011).

### III.  DISCUSSION

In the instant case, there is no dispute that offer, acceptance, and consideration existed. Rather, the critical question is whether there was a meeting of the minds between the parties such that they agreed on the essential terms of the purported contract. *See Ochoa*, 641 N.E.2d at 1044. In undertaking this analysis, the parties' outward manifestations, rather than their subjective intent, are what matters. *Zimmerman*, 826 N.E.2d at 77; *Schuler*, 862 N.E.2d at 715. From the parties' communications in May 2011, it is clear that the parties agreed on what the terms of the settlement were—namely, $3,500, including attorney's fees, and Snider's reservation of his appellate rights concerning his gun permit. Bolinger, Snider's own counsel,

sent a fax outlining these same terms, which Defendants then confirmed. (*See* Defs.' Mot. to Enforce Settl. Ex. B, ¶ 5.) Nowhere in Bolinger's statement of the settlement terms is there even a suggestion that FWPD would return Snider's firearm. While Bolinger tried to negotiate for this term in December 2010 and May 2011, Trier informed him on both occasions that the return of the firearm could not be part of the settlement.

Thus, by all outward manifestations, Snider and Bolinger understood that returning the firearm was not part of the settlement, as Bolinger's email, in which he states that "Rick" (meaning Snider) wanted Bolinger to confirm the settlement terms, did not include the return of the firearm. (*See* Defs.' Mot. to Enforce Settl. Ex. B.) The email from Bolinger's assistant accepting the settlement—with no mention of returning the firearm—further confirms that Snider and Bolinger agreed with Defendants as to the settlement terms. (*See* Defs.' Mot. to Enforce Settl. Ex. C.) Therefore, as objectively evidenced by the email and fax exchanged on May 11, 2011, a meeting of the minds occurred between the parties, thereby forming a settlement agreement under which Defendants will give Snider $3,000 and Bolinger $500, with Snider reserving his right to appeal the ISP decision denying his gun permit.

If Snider now feels dissatisfied with the settlement, his unhappiness is "neither here nor there." *See Allen*, 2011 WL 3163232, at *2. Once the agreement was reached on May 11th, Snider cannot avoid the agreement simply because he later decided the settlement was insufficient. *See Glass*, 788 F.2d at 454. Moreover, as Snider authorized Bolinger to settle,[2] he remains bound by the terms of the agreement even if he had a change of heart. *See id.* at 454-55. Accordingly, because the parties entered into an enforceable settlement agreement on May 11,

---

[2] Snider makes no argument that Bolinger lacked authority to enter into this settlement agreement. In fact, Bolinger conceded in the hearing on September 28, 2011, that he had apparent, if not actual, authority to settle.

2011, Snider's later regrets are irrelevant and do not affect the validity and enforceability of the agreement.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Enforce Settlement Agreement (Docket # 38) is GRANTED.  Defendants are ordered to deliver the agreed sums to Mr. Bolinger and to notify the Court that such delivery has been made.  Once receiving such notice, the Court will then dismiss this case with prejudice.

SO ORDERED.

Entered this 30th day of September, 2011.

/S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge